## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL CASE NO.  2:22-CV-00481-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD, | § | |
| SAMSUNG ELECTRONICS AMERICA, INC., | § | |
| SAMSUNG AUSTIN SEMICONDUCTOR, | § | |
| LLC, SAMSUNG SEMICONDUCTOR, INC., | § | |
| and ONEPLUS TECHNOLOGY (SHENZHEN) | § | |
| CO., LTD, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant OnePlus Technology (Shenzhen) Co., Ltd.'s ("OnePlus")

Motion to Sever and Stay ("OnePlus's Motion") (Dkt. No. 41) and Defendants Samsung

Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Austin Semiconductor, LLC,

and Samsung Semiconductor, Inc.'s (collectively, "Samsung") Motion to Sever and Stay

("Samsung's Motion"). (Dkt. No. 47.) In OnePlus's Motion, OnePlus contends that all of Plaintiff

Network System Technologies' ("NST") claims against it should be severed and stayed based on

the customer-suit exception and traditional stay factors, until the resolution of NST's lawsuit

against OnePlus's supplier, Qualcomm.[1] (Dkt. No. 41 at 1.) Having considered OnePlus's Motion

and related briefing, the Court finds that OnePlus's Motion should be and hereby is **GRANTED**.

In Samsung's Motion, Samsung contends that NST's claims against it based on Qualcomm chips

(the "Samsung Snapdragon Device Claims") should be severed and stayed based on the customer-

suit exception and traditional stay factors, until the resolution of NST's lawsuit against Qualcomm.

---

[1] *NST v. Qualcomm Inc. et al.*, No. 1:22-cv-1331-DAE (W.D. Tex.).

(Dkt. No. 47 at 1.) Having considered Samsung's Motion and related briefing, the Court finds that Samsung's Motion should be and hereby is **DENIED**.

## I.    BACKGROUND

On December 19, 2022, NST filed the instant action in this Court ("*NST I*") against Samsung, OnePlus, and Lenovo Group Ltd. ("Lenovo"),[2] alleging the infringement of six patents.[3] (Dkt. No. 1.) The same day, NST filed a second action in this Court, Case No. 2:22-CV-00482 ("*NST II*"), against Texas Instruments Incorporated ("TI"), Ford Motor Company ("Ford"), Volkswagen AG ("Volkswagen"), and Audi AG ("Audi"). (*NST II*, Dkt. No. 1.) *NST II* was reassigned from this Court to Judge Schroeder.[4] (*See NST II*, Dkt. No. 3.) TI makes the accused systems on a chip ("SoCs") which are purchased and installed into downstream products by Ford. (*NST II*, Dkt. No. 96 at 3.) A third NST case was filed in the Western District of Texas against Qualcomm, Inc. and Qualcomm Technologies, Inc. (collectively, "Qualcomm"): *NST v. Qualcomm Inc. et al.*, No. 1:22-cv-1331 (W.D. Tex.) ("*NST III*" or "the Qualcomm Case").[5]

On May 10, 2023, OnePlus filed its Motion to Sever and Stay all claims against it in this case based on the customer-suit exception and traditional stay factors. (Dkt. No. 41.) Shortly after, on May 17, Samsung filed its Motion to Sever and Stay Qualcomm-Based Claims against it on the same grounds. (Dkt. No. 47.) NST opposes both Motions. (Dkt. Nos. 48, 51.) Importantly, NST's claims against Samsung involve three categories of Samsung Accused Products:

> 1) Samsung's integrated circuits ("ICs"), such as its own Samsung "Exynos" SoCs, that incorporate, implement, utilize, include, or otherwise comprise one or more

---

[2] Lenovo was dismissed without prejudice on April 12, 2023 (Dkt. No. 34), and that same day, NST filed a separate lawsuit against Lenovo in this Court (Case No. 2:23-CV-167-JRG) ("*NST IV*").

[3] U.S. Patent Nos. 7,366,818 (the "'818 Patent"), 7,373,449 (the "'449 Patent"), 7,594,052 (the "'052 Patent"), 7,769,893 (the "'9893 Patent"), 8,702,893 (the "'2893 Patent"), and 8,086,800 (the "'800 Patent") (collectively, the "Asserted Patents").

[4] Volkswagen and Audi were dismissed without prejudice from *NST II* on April 5, 2023. (*NST II*, Dkt. No. 33.)

[5] NST joined Arteris, Inc. ("Arteris") in *NST III*, asserting it was proper because the Qualcomm Chips "are common to all Defendants' infringement" since all of the Qualcomm Chips "include Arteris SoC technology." (*NST III*, Dkt. No. 1, ¶¶ 17–19.)

network on chip interconnects ("NoCs") (herein, "Samsung Exynos ICs"); 2) products, devices, systems or apparatuses, whether Samsung's or others', incorporating, implementing, utilizing, including, or otherwise comprising such Samsung ICs (herein, "Samsung Exynos Devices"; and 3) Samsung's products, devices, systems or apparatuses incorporating, implementing, utilizing, including, or otherwise comprising one or more non-Samsung ICs, such as Qualcomm's "Snapdragon" SoCs, that incorporate, implement, utilize, include, or otherwise comprise one or more NoCs (herein, "Samsung Snapdragon Devices").

(Dkt. No. 51 at 1–2, citing Dkt. No. 1, ¶ 152.) Samsung's Motion is directed only toward a severance and stay of the Samsung Snapdragon Device Claims (the third category delineated above).

Of note, OnePlus and Samsung's Motions were filed shortly after Ford filed its own motion in *NST II* to sever and stay claims against it in favor of those against its supplier, TI, based on the customer-suit exception and traditional stay factors ("Ford's Motion") on April 17, 2023. (*See NST II*, Dkt. No. 38.) Ford's Motion was granted (the "*NST II* Order"). (*NST II*, Dkt. No. 96.) Ford's Motion is similar to the OnePlus and Samsung Motions.

## II.     LEGAL STANDARD

The trial court has broad discretion to sever and stay actions. *See Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (citing FED. R. CIV. P. 21). When a patent infringement suit is brought against a manufacturer and its customers, the action against the customers may be stayed pending resolution of the case against the manufacturer to avoid "imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977)); *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) (finding such a stay is not mandatory). The "customer-suit exception" to the first-file rule provides that "litigation against or brought by the manufacturer of infringing goods takes

precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Courts are instructed to avoid wasted resources through a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014). "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." Spread Spectrum, 657 F.3d at 1357 (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). A "primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463.

## III.    DISCUSSION OF ONEPLUS'S MOTION

### A.   The *NST II* Order

As an initial matter, the Court recognizes certain parallel arguments in Ford's Motion in *NST II* and OnePlus's Motion here, and the Court finds the reasoning of the *NST II* Order to be instructive. First, Ford's Motion was based on efficiency and judicial economy. (*NST II*, Dkt. No. 38 at 9.) OnePlus (and Samsung) argue both policies here, in addition to arguing avoidance of inconsistent opinions. (Dkt. No. 41 at 3; *see also* Dkt. No. 76 at 1.) NST asserts the same six patents against all Defendants across *NST I* and *NST II*. (*See* Dkt. Nos. 76-2 at 2–3; 76-3 at 2–3; 76-4 at 2–3.) Importantly, NST asserts the ***same claims*** against chip designers-manufacturers Texas Instruments ("TI") in *NST II* (Dkt. No. 76-2 at 2–3) and Qualcomm in *NST III*. (Dkt. No. 76-3 at

2–3.) Further, it asserts the same claims in *NST II* against Ford, TI's customer (Dkt. No. 76-2 at 3), and in this case against OnePlus, Qualcomm's customer (Dkt. No. 76-4 at 3). (*See* Dkt. No. 76 at 1.) Moreover, NST's claim charts against Ford (*NST II*, Dkt. No. 96 at 7–8) and OnePlus (Dkt. Nos. 53-2 to 53-7) are similarly phrased and rely on the internal operations of the chips bought from their respective suppliers.[6] (*See* Dkt. No. 76 at 1–2.)

Second, most of NST's arguments in *NST II* are the same or similar to those it makes against the OnePlus Motion. In both cases, NST has asserted:

- It needs additional discovery of customer defendant infringement (Dkt. No. 48 at 4; *NST II*, Dkt. No. 48 at 11–13);
- The customer defendant may purchase Accused Integrated Circuits ("ICs") from different parties (Dkt. No. 48 at 2; *NST II*, Dkt. No. 48 at 16);
- Indirect infringement claims weigh against a stay (Dkt. No. 48 at 3; *NST II*, Dkt. No. 48 at 10–11);
- Method claims make a stay inappropriate because those will not be resolved by suit against the designer-manufacturer defendant (Dkt. No. 48 at 3; *NST II*, Dkt. No. 48 at 13–14);
- The issues are not identical and failure to resolve all issues weighs against a stay (Dkt. No. 48 at 7; *NST II*, Dkt. No. 48 at 14–15);
- The customer defendant's agreement to be bound is insufficient to weigh in favor of a stay (Dkt No. 48 at 9; *NST II*, Dkt. No. 48 at 9–10).

The *NST II* Order rejects each of these arguments. This Court agrees with the reasoning in the *NST II* Order as discussed herein. *See generally NST II*, Dkt. No. 96.

### B. Joinder of OnePlus and Samsung

Before asserting the customer-suit exception and traditional stay factors, OnePlus argues that both itself and Samsung were improperly joined because 35 U.S.C. § 299(a)(1) expressly limits joinder of patent infringement defendants to cases where, *inter alia*, "any right to relief is asserted against the parties jointly, severally, or in the alternative." (*Id.* at 4.) OnePlus notes that

---

[6] As OnePlus points out, NST recently requested that it be permitted to amend its infringement contentions in this case because it was allowed to make "the same substitution" "for the same reasons" "under similar circumstances" in *NST II* (Dkt. No. 74 at 7), and is doing the same in the Qualcomm Case (Dkt. No. 74 at 4). (Dkt. No. 76 at 2.)

NST does not seek such relief from OnePlus and Samsung. (*Id.*) OnePlus also contends that NST has failed to identify any transactions or occurrences common to the defendants. (*Id.*) NST does not address 35 U.S.C. § 299(a)(1) in its Opposition, arguing instead that in the Fifth Circuit, Rule 20 determines proper joinder. (Dkt. No. 48 at 5, quoting FED. R. CIV. P. 20(a)(2).) NST argues that both prongs of the permissive joinder test are met. (*See id.* at 6.) However, the Court does not reach this issue because it determines that NST's claims against OnePlus should be severed and stayed.

### C.  The Customer-Suit Exception

In determining whether the customer suit exception applies, courts consider factors such as: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 4002776 at *5 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015)).

OnePlus argues that its alleged infringement is based entirely on its use of Qualcomm's products, such that resolution of NST's claims against Qualcomm in *NST III* would likely resolve all claims against OnePlus. (Dkt. No. 41 at 1.) NST responds that a severance and stay is inappropriate here because the issues are not identical across this case and *NST III*, and therefore severance and stay would not serve the goals of efficiency and judicial economy. (Dkt. No. 48 at 7.) The Court is persuaded that in this case and under these particular facts a severance and stay is appropriate with regard to OnePlus, for the reasons herein.

### 1.  OnePlus Is a Mere Reseller

OnePlus contends that it is a peripheral defendant or mere reseller as compared to Qualcomm, the "true defendant." (Dkt. No. 41 at 4.) It argues that the product at issue in this case is the Qualcomm Chips, supported by the fact that NST only identifies Qualcomm Chips as "common" to OnePlus and Samsung (rather than any products unique to OnePlus or Samsung). (*Id.* at 5, citing Dkt. No. 1, ¶ 20.) OnePlus urges that NST has admitted that Qualcomm Chips determine infringement, as demonstrated by NST's Motion for Leave to Serve Third Party Subpoenas Prior to the Rule 26(f) Conference on Qualcomm and Arteris. (*Id.* at 5–6, citing Dkt. No. 19.)

OnePlus contends that NST's claim charts and infringement contentions confirm OnePlus's "reseller" status of the Qualcomm Chips, making the claims against OnePlus peripheral to those against Qualcomm. (*Id.* at 6–7.) The asserted claims are directed to "integrated circuits" and methods "in" OnePlus products, rather than OnePlus phones or other devices. (Dkt. No. 41 at 6–7.) As such, OnePlus argues that each element of the asserted claims purportedly corresponds to internal components of the Qualcomm chips themselves. (*Id.*) OnePlus also contends that NST's specific element mapping against Qualcomm (*NST III*, Dkt. Nos. 1-07 through 1-12) is substantively identical to NST's charts against OnePlus. (Dkt. No. 41 at 6, citing Dkt. No. 1-38 through 1-43.) OnePlus concludes that not a single allegation against OnePlus is particularized to OnePlus; all claims, both method and apparatus, are directed to "Snapdragon SOC's included in the OnePlus product." (*Id.* at 7, citing Dkt. Nos. 1-38 through 1-43.) Further, OnePlus represents via declaration and in its briefing that it "does not design or manufacture any [ICs], [SoCs], or chips of any kind, in part or in whole" and "does not make any modifications to or install any

software controlling the internal operation of any Qualcomm chips." (Dkt. No. 41-1, ¶¶ 3, 5; Dkt. No. 41 at 3.) It points out that NST does not claim otherwise. (*Id.* at 7)

NST's Opposition does not apply the customer-suit doctrine factors, but instead broadly argues that severance and stay here would be inefficient, resulting in "two trials" while NST proposes a "single trial." (Dkt. No. 48 at 1, 7, 13.)  NST argues that the OnePlus Accused Products are not limited to OnePlus devices incorporating Qualcomm Chips. (Dkt. No. 48 at 2.) Rather, it asserts that its P.R. 3-1 Disclosures clarified that the Accused Products are "OnePlus's products, devices, systems or apparatuses incorporating, implementing, utilizing, including, or otherwise comprising one or more [ICs] that incorporate, implement, utilize, include, or otherwise comprise one or more network on chip interconnects ('NoCs')." (*Id.*)

Additionally, NST insists that its early request for third-party discovery from Qualcomm and Arteris is irrelevant to the customer-suit exception. (*Id.*)  In fact, NST argues that OnePlus's Motion may be denied as premature because discovery is needed to ascertain the full scope of OnePlus's infringement, importation, and possible inclusion of other chips into the OnePlus accused products. (*Id.* at 12.) NST asserts it needs such discovery, including bills of materials showing all the components included in OnePlus devices, to "identify what other NoC-containing chips and/or NoCs, which are included in NST's PR 3-1 infringement contentions…, are included in the OnePlus Accused Products beyond the Qualcomm Chips." (*Id.*)

After careful review, the Court finds that OnePlus is a "mere reseller" and as such this factor favors severance and stay. After a review of the claim charts in both this case and in the Qualcomm Case, the Court is persuaded that NST's specific element mapping against Qualcomm (*NST III*, Dkt. Nos. 1-07–1-12) is substantively identical to NST's charts against OnePlus (Dkt.

Nos. 1-38–1-43).[7] (*See* Dkt. No. 41 at 6.) This conclusion is bolstered by the *NST II* Court's similar finding regarding NST's infringement contentions against TI and Ford.[8] The Court is persuaded that the only alleged infringing activities related to OnePlus are not tied to OnePlus's downstream products. NST's failure to allege that OnePlus modifies or adapts Qualcomm Chips for use in OnePlus products strengthens the Court's conclusion.[9] (*See id.* at 2, 7.)

NST fails to highlight any notable difference between its claim charts against Qualcomm and OnePlus. While NST protests that its infringement allegations are not limited to OnePlus devices incorporating Qualcomm Chips, it fails to identify any chips aside from Qualcomm's. (*See* Dkt. Nos. 53-2–53-7.) NST has also argued that it needs to perform discovery as to OnePlus's role in the design, manufacture, and importation of the OnePlus Accused Products and the Qualcomm Chips. (Dkt. No. 48 at 11–12.) However, OnePlus has represented to this Court that it is not involved in the design or manufacture of Qualcomm Chips (Dkt. No. 41-1 at ¶ 5), and NST has pointed to nothing that indicates otherwise.

While the Court does not equate the early third-party discovery sought by NST with an "admit[tance]" that the Qualcomm chips determine infringement, NST's position as to the importance of Qualcomm discovery is not irrelevant to the "mere reseller" inquiry. (*See* Dkt. No. 19 at 6 ("[T]he technical details of the Third Parties' SoC technology is…not available from Defendants….[T]he Third Parties are uniquely in possession of technical documents and information that will enable Plaintiffs to provide more detailed and comprehensive infringement

---

[7] This conclusion excludes the '2893 Patent. NST asserts different claims of the '2893 Patent as to OnePlus and Qualcomm (and is the *only* Asserted Patent with different claims asserted against OnePlus and Qualcomm). This issue is addressed *infra*.

[8] As noted above, NST asserts the same claims against both TI and Qualcomm as well as Ford and OnePlus. The *NST II* Court concluded that "the preamble of [the claims against Ford] is the only part of the Ford claim charts that relies on evidence specific to the Ford downstream product." (*NST II*, Dkt. No. 96 at 7.)

[9] The *NST II* Court applied similar reasoning, taking particular note of Ford's declaration to the effect that Ford does not install software that modifies TI's SoCs. (*NST II*, Dkt. No. 96 at 5, citing Dkt. No. 78-1, ¶ 5.)

contentions.").) OnePlus has persuasively argued that it has little knowledge regarding the technical details of the Qualcomm Chips because that information is confidential to Qualcomm. (*See* Dkt. No. 41 at 9, citing Dkt. No. 41-1, ¶¶ 3–7.) OnePlus likely has "very little to offer in the way of evidence regarding the substantive aspects of the infringement case." *Nintendo*, 544 F. App'x at 941. The Court is not convinced by NST's arguments that it simply needs more discovery to ultimately distinguish this case from the Qualcomm Case.

In light of the sole focus of NST's infringement allegations on Qualcomm Chips, and also considering OnePlus's representation that it does not design, manufacture, or modify Qualcomm Chips, the Court finds that this factor weighs in favor of severance and stay.

### 2.   OnePlus's Agreement to Be Bound Weighs in Favor of Severance and Stay

NST argues that the Qualcomm Case would not resolve all issues against OnePlus, and that OnePlus's agreement to be bound is insufficient to support a severance and stay here. The Court disagrees.

### a.   The method claims here do not warrant different treatment.

First, NST argues that asserted method claims should be treated differently under the customer-suit doctrine because OnePlus, or others under OnePlus's direction or control, must be shown to perform each step of the method claim. (*See id.* at 7–8, citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016); *Corydoras Techs., LLC v. Best Buy Co.*, 2020 WL 1275782, at *4 (E.D. Tex. Mar. 17, 2020).) The Complaint alleges direct infringement of method claims by OnePlus for four of the six Asserted Patents. (Dkt. No. 1, ¶¶ 39, 61, 84, 126, 222, 247, 272, 327.) As a result, NST contends that staying the claims against OnePlus until resolution of *NST III* would "not be the most efficient way to resolve" the method claims asserted against OnePlus. (Dkt. No. 48 at 8.)

10

However, the *Erfindergemeinschaft* Court recognized that in *In re Nintendo*, the Federal Circuit granted a stay under customer-suit-exception principles where both a manufacturer and its customers were accused of directly infringing a method claim by using the same product, which is similar to the situation here. *See Erfindergemeinschaft*, 2016 WL 1659924, at *3–4. The *Erfindergemeinschaft* Court explained that "courts have declined to apply the customer-suit exception to cases in which the manufacturer is charged as the indirect infringer of a method patent and the retailer is charged as the direct infringer." *Id.* at *4. In this case, NST asserts direct and indirect infringement against both OnePlus (the retailer) and Qualcomm (the manufacturer). The Court is persuaded that this case is similar to *In re Nintendo*, where direct infringement was asserted against both the manufacturer and the retailer. *See* 756 F.3d at 1365.

As OnePlus points out, the asserted claims are directed to "integrated circuits" and methods "in" them, not the downstream end-user products (such as phones or other devices) sold by OnePlus. (Dkt. No. 41 at 6.) As noted above, the claim charts against Qualcomm and OnePlus are substantively identical. As in *NST II*, the evidence here "does not rely on specific characteristics of the downstream products to show infringement aside from the mere incorporation of the [Qualcomm Chips] into [OnePlus's] downstream products." *See NST II*, Dkt. No. 96 at 7. Further, the steps related to the accused products are internal to the Qualcomm Chips. (*See* Dkt. Nos. Dkt. Nos. 53-2–53-7.) Notably, NST has failed to identify any conduct by OnePlus relevant to any step of these claims. Further, just like Ford in *NST II*, OnePlus is a "mere reseller" of Qualcomm Chips and it represents that it does not modify those Qualcomm Chips. *See NST II*, Dkt. No. 96 at 7–8. As the *NST II* Court determined, this Court is unpersuaded that method claims should be treated differently under these circumstances.

**b.  The customer-suit exception does not require resolution of *all* issues.**

NST urges that "the majority of claims against OnePlus are *not identical*" to the claims against Qualcomm, such that adjudication of the Qualcomm Case would not resolve the majority of NST's claims against OnePlus. (Dkt. No. 48 at 7, emphasis added.). First, NST points out that different patent claims of the '2893 Patent are asserted against OnePlus and Qualcomm: Claim 1 of the '2893 Patent is an apparatus claim asserted against OnePlus, and claim 10 is a method claim asserted against Qualcomm. (Dkt. No. 48 at 9, citing Dkt. No. 1, ¶¶ 105, 302; *NST III*, Dkt. No. 1, ¶¶ 136, 257.) Additionally, NST argues that issues of knowledge and intent related to OnePlus's alleged indirect and willful infringement will not be resolved by the Qualcomm Case. (*Id.* at 10.)

OnePlus responds that claims against Qualcomm "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." (*See* Dkt. No. 41 at 4–5, citing *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citations omitted).) It asserts that either a noninfringement or invalidity determination in *NST III* would resolve (as moot) each of NST's claims against OnePlus here, while a judgment in NST's favor in *NST III* would exhaust its rights as a patent holder and preclude the collection of duplicative damages from OnePlus. (*Id.* at  8 (citing *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006).) OnePlus also points out that a final judgment in *NST III* would likely dispose of the '2893 claim against OnePlus.[10] (Dkt. No. 53 at 3.) OnePlus urges that, conversely, any judgment in this matter would not resolve *any* issues against Qualcomm. (Dkt. No. 53 at 2, emphasis in original.)

---

[10] OnePlus argues that a noninfringement or invalidity determination in the Qualcomm Case would resolve Claim 1 of the '2893 Patent against OnePlus here as well because it reads on the Qualcomm Chips and should have been asserted in that case. (Dkt. No. 41 at 8.) The Court does not address this issue here because it finds that the major issues of NST's case against OnePlus would be resolved even if the single claim of the '2893 Patent asserted against OnePlus is not resolved by *NST III*.

The Court agrees that resolution of each and every issue is not the correct inquiry. Rather, the Court finds that severance and stay would resolve the major issues concerning the claims against OnePlus. In *NST II*, the court found that "even if some issues against [customer] may survive a suit against [manufacturer], the customer suit exception is appropriate here because these issues 'will be greatly simplified by first resolving the claims against [manufacturer].'" *NST II,* Dkt. No. 96 at 9, quoting *Topia Tech., Inc. v. Dropbox, Inc.*, 2022 WL 18109619, at *4 (W.D. Tex. Dec. 29, 2022). This Court agrees. Here too, even if the single uncommon asserted claim of the '2893 Patent in this case is not resolved by final disposition of the Qualcomm Case, the resolution of direct infringement of the clear majority of the claims through *NST III* weighs in favor of a severance and stay. *See NST II*, Dkt. No. 96 at 8–9. As OnePlus also points out, the indirect and willfulness claims do not prevent substantial efficiencies gained by a severance and stay where adjudication of *NST III* will resolve the vast majority of claims against OnePlus. (Dkt. No. 53 at 4.) Any remaining issues upon resolution of *NST III*, such as OnePlus's intent and knowledge, are ancillary claims in this case. *See, e.g., Topia*, 2022 WL 18109619, at *4 (finding severance and stay appropriate even when issues related to induced infringement were only partially resolved).

In this case, a severance and stay would *significantly* simply issues before this Court, despite certain issues that may remain unresolved by the Qualcomm Case. *See Katz*, 909 F.2d at 1464. Severance and stay here as to the claims against OnePlus would achieve, in this context, the requisite efficiency and judicial economy upon which the customer-suit is premised.

### c.  OnePlus's stipulation to be bound is sufficient.

An "agreement to be bound by an infringement determination in a separate suit, that will leave little left for the court to adjudicate in the current suit, weighs heavily in favor of" a stay. *Wapp Tech Ltd. P'ship v. Hewlett-Packard Enters.*, 2019 WL 3818761, at *4 (E.D. Tex. Aug. 14,

2019). OnePlus represents that it agrees to be bound by the outcome in *NST III* as to infringement and invalidity. (Dkt. No. 41 at 10.) NST argues that OnePlus's agreement to be bound as to infringement and validity in *NST III* would not resolve any claims unique to OnePlus, such as its infringement of claim 1 of the '2893 Patent. (Dkt. No. 49 at 9, citing *Young Eng'rs, Inc. v. United States ITC*, 721 F.2d 1305, 1316 (Fed. Cir. 1983).) NST relies on this point to support its argument that this factor weighs against severance and stay. (*Id.*)

At the direct request of the Court, OnePlus submitted a proposed stipulation outlining its agreement to be bound by a final determination in *NST III*. (Dkt. No. 78.) OnePlus stipulates on the record to the following:

> [T]o be bound by any final, non-appealable judgment on [NST's] claims for infringement against Qualcomm Inc. or Qualcomm Technologies, Inc. (collectively, "Qualcomm") in *Network Sys. Tech., LLC v. Qualcomm Inc. et al.*, Civ. Axn. No. 1:22-cv-1331-DAE (W.D. Tex.) irrespective of whether such claims have been made against OnePlus (*e.g.*, NST's infringement claim against Qualcomm of claim 10 of US 8,072,893); any claim construction rulings issued by the Court; and any final, non-appealable judgment regarding the validity of any claim in U.S. Patent Nos. 7,366,818, 7,373,449, 7,594,052, 7,769,893, 8,072,893, and 8,086,800.

(Dkt. No. 78-1 at 1.) OnePlus expressly excludes from the stipulation any findings regarding willfulness or of its own intent as related to indirect infringement. (*Id.* at 1–2.) Further, OnePlus represents that a second *Markman* hearing would be unnecessary with respect to NST's current and proposed claims against OnePlus. (*Id.* at 2.)

The Court finds, in view of OnePlus's stipulation and the likelihood of resolution regarding the major issues against it, that this factor weighs in favor of a severance and stay. OnePlus's stipulation is consistent with similar stipulations in other cases where courts have found the customer-suit doctrine applicable. Its agreement to be bound by the Qualcomm Court's claim construction and any final rulings on infringement and validity "reinforce[s] that the [] claims against the Customer Defendants are peripheral to the central infringement dispute in this lawsuit."

14

*See NST II*, Dkt. No. 96 at 11 (quoting *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, 2015 WL 10818739 at *3 (W.D. Tex. Aug. 21, 2015)). Further, as noted by the *NST II* Court, a representation to the Court that an additional *Markman* hearing will be unnecessary also weighs in favor of severance and stay. *Id.* (citing *Katz,* 909 F.2d at 1464). This factor weighs in favor of severance and stay.

### 3.  Qualcomm Is the Source of Alleged Infringing Activity or Conduct

OnePlus alleges that Qualcomm is the only source of the OnePlus Accused Products. (Dkt. No. 41 at 11.) NST does not state otherwise. Accordingly, this factor weighs in favor of severance and stay. *See NST II*, Dkt. No. 96 at 11–12 (citing *Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 WL 1423990, at *4 (W.D. Tex. Jan. 30, 2023) ("[Plaintiff] does not allege in its complaint or in the infringement allegations that [customer defendant] infringes the asserted patents independently of [manufacturer defendant's] system.").)

### D.  Traditional Stay Factors

OnePlus argues that the traditional stay factors also demonstrate that severance and stay is appropriate. (Dkt. No. 41 at 11.) Courts may evaluate three traditional stay factors in considering customer suits: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lighthouse Consulting Grp.*, 2020 WL 6781977, at *2 (citations omitted). The Court considers the traditional stay factors for the sake of completeness.

### 1.  NST Will Not Be Prejudiced

NST will not be unduly prejudiced in this case by a severance and stay of the claims against OnePlus because discovery in this matter focuses on Qualcomm as the "true defendant." *See NST*

15

*II*, Dkt. No. 96 at 12; *see also GreatGigz Sols.*, 2022 WL 1037114, at *4 (finding a stay was not unduly prejudicial because the suits focused largely on "the entity engaged in design, development, and sale of the accused products"). OnePlus argues that it has limited knowledge of Qualcomm's information.[11] (Dkt. No. 41-1, ¶ 6.) The Court's conclusion that discovery in this matter focuses on Qualcomm is strengthened by NST's early motion seeking discovery from Qualcomm and Arteris (discussed *supra*). (*See* Dkt. No. 19.) As OnePlus argues, "'discovery directly from [Qualcomm] will…yield better evidence because [it]…has greater access to evidence regarding the functionality' than 'any of its customers.'" (Dkt. No. 41 at 12, quoting *Westport*, 2023 WL 318466, at *3.) This factor weighs in favor of granting a stay.

### 2.   A Stay Will Simplify Issues

As in *NST II*, NST's argument that a severance and stay will not resolve all issues is unpersuasive, as resolution of all issues is not required. *See supra* Section III.C.2.b; *see also NST II*, Dkt. No. 96 at 12. The resolution of the Qualcomm Case will greatly simplify the instant case by resolving whether the accused products infringe the vast majority of claims. *See id.* This factor also weighs in favor of a stay.

### 3.   The Case Is in its Early Stages

OnePlus filed its Motion on the date of its first appearance in this case—the first day possible without waiving its FRCP Rule 12 defenses, before the initial Rule 26(f) conference, and before the Court's initial Scheduling Conference. (Dkt. No. 41 at 14.) Although a trial date has been set and discovery has begun, the case is still in its early stages. The *Markman* hearing is not scheduled until April 2024, with fact discovery open until May 24, 2024 and expert discovery open

---

[11] OnePlus further represents that "Qualcomm limits its information and documents (including source code) shared with OnePlus on a 'need-to-know basis' so even OnePlus' second-hand knowledge of Qualcomm's chips is quite limited." (Dkt. No. 41-1, ¶ 7.)

until July 15, 2024. (Dkt. No. 59 at 3.) NST only addresses the stage of discovery to argue that it needs to obtain discovery as to OnePlus's role in the design, manufacture, and importation of the accused products. (*See* Dkt. No. 48 at 11–13.) However, as discussed above, OnePlus has represented to this Court that it is not involved in the design or manufacture of the Qualcomm Chips. Those chips are the center of this controversy. Lastly, trial is not scheduled until October 28, 2024, almost a full year away. Accordingly, these facts support a severance and stay.

## IV.   ANALYSIS OF SAMSUNG'S MOTION

### A.  A Severance and Stay Will Not Resolve the Major Issues Against Samsung

While many of the arguments in Samsung's Motion are on the same grounds as those of OnePlus, the Court reaches a different conclusion with regard to Samsung. This is because a severance and stay of the Qualcomm-based claims (the "Samsung Snapdragon Device Claims") from the remainder of the claims against Samsung would not adequately achieve efficiency and judicial economy upon which the customer-suit exception is premised. *See Spread Spectrum*, 657 F.3d 1349, 1357 ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy."). While some factors may weigh in favor of a severance and stay, the Court finds that "substantial savings of litigation resources" are unlikely given the multiple issues unique to Samsung, such that a severance and stay is inappropriate with regard to the Samsung Snapdragon Device Claims. *See In re Google*, 588 Fed. App'x at 991.

### 1.   Samsung Is A Mere Reseller With Respect to the Qualcomm-based Claims

Samsung contends that it is equivalent to a "reseller" with respect to the Qualcomm-based claims. Samsung makes essentially the same arguments as OnePlus did with respect to this factor, relying on NST's substantially similar infringement contentions as to itself and Qualcomm. (*See* Dkt. No. 47 at 7.) Samsung argues that NST alleges that each element of the asserted Qualcomm-

based claims is met solely by the structure and/or functionality of the accused Qualcomm Chips. (*Id.* at 5, citing *CyWee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 4002776, at *6 (E.D. Tex. Aug. 22, 2018).) Additionally, Samsung notes that NST's allegations against Qualcomm and Samsung are based on the very same infringement analysis.[12] (*Id.*, *comparing* Dkt. No. 1, Exs. 7–12, *with NST III*, Dkt. No. 1, Exs. 7–12.) Samsung also represents that it does not make any modifications or install any software relevant to a determination of infringement,[13] pointing out that NST makes no allegations to the contrary. (*Id.*; Dkt. No. 47-1, ¶ 6.) Samsung further asserts that Qualcomm is the party with the relevant factual information showing the design and operation of the accused Qualcomm Chips, and does not share technical details with its customers. (*Id.*; *see also* Dkt. No. 47-1, ¶ 7.) Samsung also notes NST's early motion seeking discovery from Qualcomm and Arteris. (Dkt. No. 47 at 8–9, citing Dkt. No. 19.)

NST's Opposition does not address the customer-suit exception factors or traditional stay factors, but emphasizes that a severance and stay would be inefficient and would result in two trials against Samsung instead of a single trial. (Dkt. No. 51 at 8.) The majority of NST's Opposition focuses on the fact that the Samsung Snapdragon Device Claims are not identical to the claims against Qualcomm. (*See, e.g.*, Dkt. No. 51 at 8.) While these arguments are addressed *infra*, the Court finds that NST does not meaningfully dispute that its infringement contentions against *both* Samsung and Qualcomm (the "common claims") concern only the structure and function of the Qualcomm Chips.

---

[12] Samsung asserts that the only difference in infringement allegations is by reference to marketing literature describing the presence of Qualcomm Snapdragon SoCs in certain Samsung end-user products. (Dkt. No. 47 at 3, *comparing* Dkt. No. 1, Exs. 7–12, *with NST III*, Dkt. No. 1, Exs. 7–12.)

[13] Specifically, Samsung represents that it "incorporates Accused Qualcomm Chips into certain Samsung products such as mobile phones. Samsung does not make any modifications to the accused interconnect or other circuitry in the Accused Qualcomm Chips that are incorporated into its products, nor does it install any software that affects the operation of the interconnect." (Dkt. No. 47-1, ¶ 6.)

As it did in its Opposition to OnePlus's Motion, NST argues here that Samsung ignores the full scope of its claims, because the "Samsung Accused Products do not include bare Snapdragon ICs[.]" (*Id.* at 3–4.) With regard to the Samsung Snapdragon Devices, NST's allegations include: "Samsung's products, devices, systems or apparatuses incorporating, implementing, utilizing, including, or otherwise comprising one or more non-Samsung ICs that incorporate, implement, include, or otherwise comprise one or more NoCs." (*Id.* at 4.) Again, however, NST identifies no chips other than Qualcomm's in the Samsung Snapdragon Devices. NST asserts it needs discovery, including bills of materials showing all the components included in Samsung devices, to "identify what other NoC-containing ICs and/or NoCs, which are included in NST's PR 3-1 infringement contentions…, are included in the Samsung Snapdragon Devices beyond the Snapdragon ICs." (*Id.*)

The Court agrees with Samsung that it is a mere reseller with regard to the Samsung Snapdragon Device Claims. After a review of the claim charts in both this case and in the Qualcomm Case with regard to the common claims asserted, the Court is persuaded that NST's specific element mapping against Qualcomm (*NST III*, Dkt. Nos. 1-07–1-12) is substantively identical to NST's charts against Samsung (Dkt. Nos. 1-07–1-12).[14] (*See* Dkt. No. 47 at 1, 3, 5.) In light of the focus of NST's infringement allegations regarding the Samsung Snapdragon Devices on Qualcomm Chips alone, combined with Samsung's representation that it does not modify or install software affecting the circuitry in the Qualcomm Chips, the Court finds that this factor weighs in favor of severance and stay. *See Google*, 588 F. App'x at 990 (staying claims where "nearly identical" claim charts "rel[ied] almost exclusively on the underlying functionalities" within the manufacturer's source code).

---

[14] This conclusion excludes eleven claims: claim 1 of the '2893 Patent, claims 1–6 and 9 of the '449 Patent and claims 1–3 of the '9893 Patent, which are not asserted against Qualcomm. This issue is addressed *infra*.

### 2.   The Majority of Issues Will Likely Not Be Simplified By a Stay

NST argues that the majority of Samsung Snapdragon Device Claims are not identical to the claims against Qualcomm, such that adjudication of NST's claims against Qualcomm would not even resolve the majority of that subset of claims. (Dkt. No. 51 at 8.) Further, NST contends that Samsung's agreement to be bound is insufficient to support a severance and stay here. (*Id.* at 10–11.) These facts are very clear and relevant. The Court finds that this factor weighs heavily against severance and stay.

#### a.   The method claims here do not warrant different treatment.

As it did in its Opposition to OnePlus's Motion, NST argues here that asserted method claims should be treated differently under the customer-suit doctrine. (Dkt. No. 51 at 13–14.) The Court rejects this argument for the same reasons explained above. *See supra*, Section III.C.2.a.

#### b.   The customer-suit exception does not require resolution of all issues, but it does require the resolution of "the major issues."

NST argues that a severance and stay of the Samsung Snapdragon Device Claims does not serve the guiding principles of the customer-suit exception: efficiency and judicial economy. Two of the three categories of Samsung Accused Products (the "Samsung Exynos Claims", comprised of the Accused Samsung Exynos ICs and Samsung Exynos Devices) would not be resolved by adjudication of *NST III*. (*Id.* at 8–9.) Out of nineteen claim charts attached to NST's complaint, only six are specific to the Samsung Snapdragon Devices at issue in Samsung's Motion. (*Id.* at 9.) Therefore, NST argues that the requested severance and stay pending resolution of *NST III* "would not aid in resolving all, or even two-thirds, of the infringement allegations detailed in the claim charts." (*Id.*) NST concludes that a severance and stay of the Samsung Snapdragon Device Claims would require it to litigate against Samsung twice with regard to the same six patents. (*Id.* at 9–10, citing *In re Google*, 588 F. App'x 988 (pointing out that this case does not support Samsung's

argument because there, the Federal Circuit found that two suits on the same patents with the same party would produce "wasteful and unnecessary litigation").)

Samsung responds that it has not requested a stay of the two categories of Accused Samsung Exynos Claims, such that NST's argument regarding that portion of the case "misses the point." (Dkt. No. 54 at 4.) Samsung contends that the stay of the Samsung Snapdragon Device Claims is appropriate, citing case law where only portions of claims were stayed. (*Id.* at 4–5, citing, *e.g.*, *Sonrai Memory Ltd. v. Samsung Elecs. Co., Ltd.*, 2022 WL 572301, at *4 (W.D. Tex. Feb. 24, 2022).)

NST contends that adjudication of *NST III* could not even resolve the majority of the *subset* of claims at issue in this Motion. In large part, this is because different patent claims of three of the Asserted Patents are asserted as between Qualcomm and Samsung. Claim 1 of the '2893 Patent,[15] claims 1–6 and 9 of the '449 Patent, and claims 1–3 of the '9893 Patent are asserted against Samsung, but not Qualcomm. (*Id.* at 5.) As such, NST argues that adjudication of the differing claims would not resolve any of those claims here. (*Id.* at 9, citing *Sas Inst., Inc.*, 2019 U.S. Dist. LEXIS 229850, at *8.) NST also argues that issues of knowledge and intent related to Samsung's alleged indirect and willful infringement will not be resolved by the Qualcomm Case. (*Id.* at 11, citing *Corydoras Techs.*, 2020 U.S. Dist. LEXIS 45578, at *14–15 (E.D. Tex. Mar. 16, 2020).)

Samsung responds that NST's "tactical claim splitting" is "unavailing" when the claims are directed to the chips themselves. (Dkt. No. 54 at 2.) It further argues that NST's contentions as to the "split" claims are substantively identical to its contentions regarding the claims asserted against Qualcomm, and that they rely on the same evidence. (*Id.*) Samsung then concludes that "if

---

[15] Claim 1 of the '2893 Patent is an apparatus claim asserted against Samsung, and claim 10 is a method claim asserted against Qualcomm. (Dkt. No. 51 at 10, citing Dkt. No. 1, ¶¶ 105, 281; *NST III*, Dkt. No. 1, ¶¶ 136, 257.)

the accused Qualcomm chips are found not to infringe these patents in [*NST III*], NST will be barred by issue preclusion, claim preclusion, and the *Kessler* doctrine from pursuing claims against Samsung based on those same chips." (*Id.*) Samsung then argues—without citation to any claim charts or infringement contentions—that the accused products are "essentially the same" with respect to the split claims. (*Id.* ("[W]here the accused products are 'essentially the same'—as they are here—both claim preclusion and the *Kessler* doctrine bar 'both those claims that were brought as well as those that could have been brought in the earlier lawsuit.'") (quoting *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1374–77 (Fed. Cir. 2020).)

The Court is of the opinion that while the issues across the two cases need not be identical, resolution of *NST III* must be likely to dispose of the ***major*** issues in this case. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (internal citations omitted) (emphasis added). Such is not the case here. It is undisputed that two out of three categories of Samsung Accused Products would remain to be adjudicated before this Court at a later date. This means that even if the final adjudication of *NST III* resolved all issues concerning the Samsung Snapdragon Device Claims, that would leave approximately two-thirds of this case pending before this Court. (*Id.*)

Further and importantly, Samsung has not persuaded the Court that the entirety of the Samsung Snapdragon Device Claims would be resolved by final adjudication of *NST III*. There are eleven claims asserted against Samsung within the Samsung Snapdragon Device Claims (of which there are 34 total) that are not asserted against Qualcomm in *NST III*.[16] Samsung only addresses NST's "claim splitting" in a single paragraph of its reply brief, where it makes threadbare assertions that these eleven uncommon claims would be resolved by adjudication of the Qualcomm

---

[16] Claim 1 of the '2893 Patent, claims 1–6 and 9 of the '449 Patent, and claims 1–3 of the '9893 Patent.

Case because the Accused Products are "essentially the same." (*See* Dkt. No. 54 at 2.)   For example, Samsung states that "NST's contentions as to these split claims are substantively identical to its contentions regarding the claims asserted against Qualcomm and rely on the same purported evidence" *without* citation to claim charts or infringement contentions. (*See id*.) It argues that both claim preclusion and the *Kessler* doctrine bar claims that have been brought as well as those that could be brought, and states that the Accused Products are "essentially the same" in this case and *NST III*, again with no analysis or reliance on evidence. While the Court does not address how issue preclusion and/or the *Kessler* doctrine would apply to these uncommon claims, the Court is simply not persuaded by Samsung's truncated argument that these eleven claims asserted against Samsung, but not Qualcomm, would  be resolved by *NST III*.

Additionally, as with NST's claims against OnePlus, NST asserts claims of indirect infringement and willfulness against Samsung. Issues such as Samsung's intent and Samsung's importation of the Accused Products may remain in this case. This is different from those issues in the case against OnePlus and in the *NST II* case, where this Court and the *NST II* Court found those issues ancillary even if they "may survive" against OnePlus and against Ford. With respect to Samsung, these issues may remain *in addition* to the claims sure to remain concerning two entire categories of Samsung Accused Products, as well as the claims uncommon to Samsung and Qualcomm. Further, Samsung does not dispute that many of the factual inquiries for indirect and willful infringement with regard to the Samsung Exynos Claims and the Samsung Snapdragon Device Claims will overlap. (*See* Dkt. No. 51 at 12; *see also* Dkt. No. 54 .)

For these reasons, the Court finds that the major issues of the suit against Samsung would likely not be resolved by *NST III*. Issues of infringement, invalidity, and willfulness must still be adjudicated before this Court *at least* with respect to the Samsung Exynos Claims. Further, the

Court finds it is likely that major issues will remain with respect to the Samsung Snapdragon

Device Claims in light of the eleven claims asserted against Samsung here but not against

Qualcomm in *NST III*.

### c. Samsung's stipulation to be bound is insufficient in light of the issues that will be left unresolved by *NST III*.

At the request of the Court, Samsung submitted a proposed stipulation outlining its

agreement to be bound by a final determination in *NST III*. (Dkt. No. 78.) Samsung stipulates to

the following in the case that its Motion is granted:

> [T]o be bound by any final, non-appealable judgment of infringement of any valid claims
> in *Network System Technologies, LLC v. Qualcomm Inc., et al.*, Case No. 1:22-cv-1331
> (W.D. Tex.) as to the accused Qualcomm Snapdragon SoCs, and to the extent Samsung has
> had a full and fair opportunity to present a validity defense with respect to the unstayed
> Exynos-based claims (which are not the subject of Samsung's motion, and which are
> currently scheduled to go to trial before NST's claims against Qualcomm), Samsung agrees
> in any subsequent trial in this District pertaining to the stayed claims against Samsung's
> Qualcomm-based products to be bound by any final, non-appealable judgment regarding
> the validity of any claim in U.S. Patent Nos. 7,366,818; 7,373,449; 7,594,052; 7,769,893;
> 8,072,893; and 8,086,800.

(Dkt. No. 79-1 at 1.) Samsung expressly excludes from the stipulation any findings regarding

willfulness. (*Id.* at 2.)

As the Court explained above, major issues will remain in this case regardless of the

outcome of the Qualcomm Case. In light of those remaining major issues, Samsung's stipulation

to be bound by the *NST III* Court's determination is unavailing.

### 3. Qualcomm Is the Source of Alleged Infringement of Some Claims

Samsung alleges that Qualcomm is the only source of the alleged infringement of the

Accused Samsung Snapdragon Devices. (Dkt. No. 47 at 10.) NST does not identify allegations in

its complaint or claim charts that state otherwise. However, as explained above, Qualcomm is not

the source of the alleged infringement with regard to the Samsung Exynos Claims, and resolution

of *NST III* would likely leave major issues before this Court regarding the Accused Samsung

Snapdragon Devices. The fact that Qualcomm is the source of alleged infringement as to the Qualcomm-based claims is not enough to achieve a severance and stay when there would still be at least one trial before this Court, and where there are likely to be unresolved major issues upon the resolution of the Qualcomm Case.

### B.  The Traditional Stay Factors Do Not Require a Different Result

As detailed above, the Court is convinced that too many major issues are likely to remain after the adjudication of the Qualcomm Case for a severance and stay to serve the goals of efficiency and judicial economy. Although the case is still in relatively early stages, the Court finds that a stay will not sufficiently simply the case against Samsung and that accordingly, NST would likely be prejudiced by a stay. In the Court's view, the probable outcome of the relief requested by Samsung is two trials before this Court against a single defendant concerning the same six patents. A stay in this case would likely delay NST's full recovery from Samsung until after NST adjudicates its case against Qualcomm.

### V.    CONCLUSION

Having considered OnePlus's Motion and related briefing, the Court is of the opinion that OnePlus's Motion should be and hereby is **GRANTED**. Accordingly, it is **ORDERED** that NST's case against OnePlus be **SEVERED** into a separate case. The Clerk of Court is directed to designate a new cause number for the severed case. It is further **ORDERED** that such newly severed case regarding NST's claims against OnePlus is **STAYED** in its entirety until the earlier of a final judgment in *Network Systems Technologies, LLC v. Qualcomm Inc. et al.*, Civil Action No. 1:22- cv-1331-DAE (W.D. Tex.), or by subsequent order of this Court. The parties shall inform the Court promptly by joint notice as to any disposition of the Qualcomm Case.

Having considered Samsung's Motion and for the reasons set forth herein, the Court is of the opinion that Samsung's Motion should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 14th day of November, 2023.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE